J-S11020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATHAN HOWARD | : | |
| | : | |
| Appellant | : | No. 772 WDA 2019 |

Appeal from the Judgment of Sentence Entered July 21, 2015
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001876-2014

BEFORE: NICHOLS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.: **FILED MARCH 27, 2020**

Nathan Howard (Appellant) appeals *pro se* from the judgment of sentence imposed after a jury convicted him of one count each of drug delivery resulting in death and possession of a controlled substance by an inmate, and three counts of contraband/controlled substance to a confined person prohibited.[1] We affirm.

The trial court summarized:

> After the execution of a search warrant on April 26, 2014, at the El Patio Motel, [Appellant] was arrested. He was charged with various drug offenses and incarcerated in the Erie County Prison. The decedent, Stephen Burkhart, was an inmate at the time on B Block where [Appellant] was assigned.
>
> On May 2, 2014, Burkhart collapsed and was transported to Hamot Hospital from the prison. On May 5, 2014, Burkhart was declared brain dead. The cause was determined to be drug

---

[1] 18 Pa.C.S.A. §§ 2506(a), 5123(a.2) and (a).

toxicity. A subsequent investigation determined that [Appellant] had provided Burkhart, while in the prison, with the drugs which killed him.

[Appellant] was charged at Count One: Drug Delivery Resulting in Death, a felony of the first degree; Count Two: Possession of a Controlled Substance/Contraband by an Inmate, a felony of the second degree; and at Counts Three, Four and Five, one charge at each count of Contraband, Controlled Substance to a Confined Person Prohibited, all felonies of the second degree.

A jury trial was held from May [18-21], 2015, on the five allegations against [Appellant]. The jury found [Appellant] guilty of all charges. [Appellant] was sentenced by this [c]ourt on July 21, 2015. The sentences of incarceration at each count, except Count Five which merged with Count One for sentencing purposes, were in the aggravated range and as follows: Count One: 126 months to 360 months; Count Two: 36 months to 72 months consecutive to Count One; Count Three: 36 month to 72 months consecutive to Count Two; Count Four: 36 months to 72 months consecutive to Count Three.

Trial Court Opinion, 4/26/19, at 1-2.

Appellant did not file a timely post-sentence motion or notice of appeal. However, Appellant filed a timely petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, and the court reinstated his direct appeal rights *nunc pro tunc*. Order, 2/27/19. Appellant subsequently expressed a desire to proceed *pro se*, and on August 2, 2019, this Court remanded the case to the trial court for a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998). The trial court conducted a hearing on September 9, 2019, after which it ordered that Appellant be permitted to proceed *pro se*.

Appellant presents the following three issues for our review:

1. WHETHER THE SUFFICIENCY OF THE EVIDENCE WAS LACKING AS IT PERTAINS TO THE TWO (2) PRINCIPLE ELEMENTS OF THE CRIMINAL STATUE 18 Pa.C.S. §2506(a) DRUG DELIVERY RESULTING IN DEATH, (i) [I]NTENTIONALLY ADMINISTERING, DISPENSES, DELIVERING, GIVES, PRESCRIBES, SELLS OR DISTRIBUTES ANY CONTROLLED SUBSTANCE AND (ii) DEATH CAUSED (RESULTING IN) THE USE OF THAT DRUG. THE COMMONWEALTH FAILED [TO MEET] ITS BURDEN TO PROVE EACH AND EVERY ELEMENT BEYOND A REASONABLE DOUBT, BY THE ALLEGED ACTIONS OF [APPELLANT], VIOLATING THE DUE PROCESS CLAUSE OF PA CONST. ART. 1, §9, & THE 14TH AMENDMENT OF THE U.S. CONST.

2. WHETHER THE STATE COURT ERRED IN DISMISSING [APPELLANT'S] POST-SENTENCING MOTION/MOTION IN ARREST OF JUDGMENT/ACQUITAL AND/OR NEW TRIAL, AS IT PERTAINS TO DR. ERIC VEY'S LACK OF AN AUTOPSY TO PROVE THE ELEMENT OF CAUSATION - THE STATE COURT ABUSED ITS DISCRETION IN ITS MISAPPLICATION [OF] STATE CASE LAW [AND] DEPRIVED [APPELLANT] OF THE PROCEDURAL DUE PROCESS GUARANTEED BY STATE & FEDERAL LAW UNDER THE SUBSTANTIVE PRINCIPLES OF ART. 1, §9 OF PA CONST. & THE 14TH AMENDMENT OF THE U.S. CONST.

3. WHETHER THE STATE COURT ERRED IN DISMISSING [APPELLANT'S] POST-SENTENCING MOTION/MOTION IN ARREST OF JUDGMENT/ACQUITAL AND/OR NEW TRIAL, AS IT PERTAINS TO THE COURT'S ABUSE OF DISCRETION IN THE ALLOWANCE OF EVIDENCE AND POLICE OFFICER Lieutenant (Lt.) NOLAN'S TESTIMONY OF [APPELLANT'S] CONVICTION AT DOCKET NO. 1240 OF 2014 UNDER Pa.R.E. 404(b)(2) DURING TRIAL, THAT WAS SO FUNDAMENTALLY UNFAIR, VIOLATING THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT OF THE U.S. CONST.

Appellant's Brief at 4-5.[2]

---

[2] In his second and third issues, Appellant references the trial court's "dismissal of [his] post-sentencing motion/motion in arrest of judgment/acquittal and/or new trial . . ." Our review of the record, particularly the docket and the notes of testimony from the third and fourth days of trial, when the parties rested and the jury reached its

In his first issue, Appellant challenges the sufficiency of the evidence supporting his conviction of drug delivery resulting in death. We recently explained:

> A challenge to the sufficiency of the evidence requires this Court to determine "whether the evidence admitted at trial, and all the reasonable inferences derived therefrom viewed in favor of the Commonwealth as verdict winner, supports the jury's finding of all the elements of the offense beyond a reasonable doubt." **Commonwealth v. Packer**, 641 Pa. 391, 168 A.3d 161, 163 n.3 (2017) (citation and quotation marks omitted).
>
> The provision criminalizing a drug delivery resulting in death is set forth under Chapter 25 of the Crimes Code, which relates to homicide. Section 2506 states, in relevant part:
>
> > **(a) Offense defined.—**A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64),[ ] known as The

---

verdicts, reveals no oral motions, and Appellant's counsel did not file a post-sentence motion on Appellant's behalf. Although the docket shows *pro se* correspondence from Appellant seeking post-sentence relief, (stamped July 24, 2015 and mailed to Appellant's counsel on July 27, 2015 from the Deputy Clerk of Records), that filing was a legal nullity with no effect. **Commonwealth v. Nischan**, 928 A.2d 349, 355 (Pa. Super. 2007) (discussing a *pro se* post-sentence motion filed by a petitioner who had counsel). When a counseled defendant files a *pro se* document, it is noted on the docket and forwarded to counsel pursuant to Pa.R.Crim.P. 576(A)(4), but no further action is to be taken. Moreover, a *pro se* filing has no tolling effect. **See** Pa.R.Crim.P. 576 cmt. ("The requirement that the clerk time stamp and make docket entries of the filings in these cases only serves to provide a record of the filing, and does not trigger any deadline nor require any response."). **Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016).

> Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.
>
> 18 Pa.C.S. § 2506. Section 2506 "consists of two principal elements: (i) [i]ntentionally administering, dispensing, delivering, giving, prescribing, selling or distributing any controlled substance or counterfeit controlled substance and (ii) death caused by ('resulting from') the use of that drug." ***Commonwealth v. Kakhankham***, 132 A.3d 986, 991-92 (Pa. Super. 2015) (citation and footnote omitted).

***Commonwealth v. Peck***, 202 A.3d 739, 743–44 (Pa. Super. 2019)

(footnotes omitted), ***appeal granted in part***, 218 A.3d 374 (Pa. 2019).

> [T]he current version of Section 2506 does not expressly classify drug delivery resulting in death as a recognized category of homicide. ***See*** 18 Pa.C.S. § 2506(a); ***see also*** 18 Pa.C.S. § 2501(b) (indicating that "[c]riminal homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter."). Therefore, under the present version of Section 2506, the Commonwealth must demonstrate that a defendant was at least "reckless" as to the death caused by the use of an illicitly delivered drug. ***Commonwealth v. Kakhankham***, 132 A.3d 986, 995 (Pa. Super. 2015). Because "the dangers of heroin are so great and well-known," this Court has concluded that a delivery of heroin alone satisfies the recklessness requirement when a death occurs as a result of the sale." ***Commonwealth v. Storey***, 167 A.3d 750, 757 (Pa. Super. 2017) (citation omitted).

***Id.*** at 744, n.5.

Appellant makes two sufficiency arguments. First, he argues that the evidence was insufficient to support a finding that he delivered a controlled substance to the decedent, Stephen Burkhart. Appellant's Brief at 13-15. Second, he argues that the evidence was insufficient to prove that Mr. Burkhart's death was the result of a drug overdose. ***Id.*** at 16-23. Both claims are meritless. Appellant disregards the well-settled precept that the jury, as

the factfinder, is free to believe all, part or none of the evidence, and we, as an appellate court, review the evidence in the light most favorable to the verdict winner; we may not substitute our judgment for the jury, and the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *Commonwealth v. Storey*, 167 A.3d 750, 757 (Pa. Super. 2017) (citations omitted). Further, the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by circumstantial evidence. *Id.*

Here, the trial court detailed the abundance of evidence to support the jury's determination that Appellant was guilty of fentanyl delivery resulting in Mr. Burkhart's death. *See* Trial Court Opinion, 11/26/19, at 4-15. In sum, Appellant was booked into the Erie County Prison after police searched his hotel room and recovered heroin and fentanyl. N.T., 5/20/15, at 39-41. Although Appellant was strip-searched, the deputy warden testified that the search is not always "100% effective," and in this case, a cavity search was not performed on Appellant. N.T., 5/19/15, at 151-52. Another inmate, Michael Dominick, testified to receiving heroin from Appellant while incarcerated; after Mr. Dominick ingested the heroin, he woke up in the hospital. Jonathan Amon, also an inmate, testified to seeing the decedent, Mr. Burkhart, with heroin in his cell on May 1, 2014. The next day, he witnessed Appellant shake hands with Mr. Burkhart, after which he saw a white piece of paper in Mr. Burkhart's hand, which had been empty before the

handshake.  Mr. Amon and Mr. Burkhart subsequently snorted the heroin.  Mr. Amon blacked out and was hospitalized.  "Later on May 2, 2014, Stephen Burkhart was brought to medical as he was suspected of being under the influence of something."  Trial Court Opinion, 11/26/19, at 10.  Mr. Burkhart eventually agreed to be catheterized and tested positive for opiates, and a lab report from a candy wrapper found with Mr. Burkhart tested positive for fentanyl.  *Id.*  After Mr. Burkhart became increasingly ill and died, Mr. Dominick told the deputy warden that he got his drugs from Appellant.  *Id.* at 11.  Dr. Eric Vey, the Erie County Forensic Pathologist, reviewed Mr. Burkhart's multiple hospital toxicology reports and concluded within a reasonable degree of medical certainty that Appellant died "as a consequence of drug toxicity."  *Id.* at 12.  Dr. Vey specified that Mr. Burkhart's "21" fentanyl level "was almost three times the average lethal level [of 8.3]."  *Id.; see also* N.T., 5/20/15, at 16.

The above testimony is a mere summary of the evidence presented over the three-plus days of trial; however, it clearly rebuts Appellant's contention that the Commonwealth presented insufficient evidence to support the jury's finding that he delivered a controlled substance to Mr. Burkhart, who died as a result.

In his second issue, Appellant assails the expert testimony of Dr. Vey because Dr. Vey concluded that Mr. Burkhart died of fentanyl toxicity without the benefit of an autopsy.  Appellant's Brief at 24-31.  Averring that

"toxicology testing is insufficient to prove the element of death," Appellant argues that the trial court erred in permitting Dr. Vey's testimony. This issue is waived.

We have explained:

In order to preserve an evidentiary objection for purposes of appellate review, a party must interpose a timely and specific objection in the trial court. "The rule is well settled that a party complaining, on appeal, of the admission of evidence in the [c]ourt below will be confined to the specific objection there made." **Commonwealth v. Cousar**, 593 Pa. 204, 928 A.2d 1025, 1041 (2007), quoting **Commonwealth v. Boden**, 399 Pa. 298, 159 A.2d 894, 900 (1960).

**Commonwealth v. Thomas**, 194 A.3d 159, 166 (Pa. Super. 2018).

Appellant — who was represented by counsel at trial — did not "lodge a timely and specific objection" to Dr. Vey's testimony. In fact, counsel addressed Dr. Vey's testimony and the absence of an autopsy in his opening remarks to the jury, stating:

You will hear from Dr. Vey. He's the forensic pathologist in Erie County. And for some unexplainable reason Dr. Vey never performed an autopsy on Mr. Burkhart.

N.T., 5/19/15, at 40. Also, when the Commonwealth called Dr. Vey to testify, Appellant's counsel stated that he had "no objection" to Dr. Vey's expert qualifications. N.T., 5/20/15, at 4.

Waiver notwithstanding, we note:

Expert testimony is generally admissible in any case, where such testimony goes to a subject requiring special knowledge, skill or intelligence beyond that possessed by the ordinary juror. A determination of whether or not a witness is telling the truth is a

- 8 -

subject well within the ordinary knowledge and experience of the average juror.

***Commonwealth v. Balodis***, 747 A.2d 341, 345 (Pa. 2000) (citation omitted).

Further, in rejecting the merits of this issue, the trial court correctly stated, "there is no requirement of an autopsy to prove cause of death recognized under Pennsylvania law." Trial Court Opinion, 11/16/19, at 19, citing ***Commonwealth v. Ali***, 10 A.3d 282, 306 (Pa. 2010) (a medical expert who did not perform the autopsy may testify as to cause of death as long as the testifying expert is qualified and sufficiently informed).

In his third and final issue, Appellant challenges the admission of prior bad acts evidence under Pa.R.E. 404(b). The Commonwealth, in advance of trial, filed a motion to introduce evidence of Appellant's crimes, wrongs and other acts pursuant to Pa.R.E. 404(b). The trial court heard argument on the Commonwealth's motion on the first day of trial and decided the motion in the Commonwealth's favor. N.T., 5/18/15, at 16 ("we'll allow it in"). Appellant claims he was prejudiced by the court's admission of testimony from Erie Police Lieutenant Michael Nolan about Appellant's arrest at the El Patio Hotel; Appellant also claims Lieutenant Nolan's testimony was irrelevant. Appellant's Brief at 32. Appellant cites "the false testimony of Lt. Nolan, as demonstrated by a complete review of the record," and states, "[t]he prejudice is apparent." ***Id.*** at 38. We disagree.

The Pennsylvania Supreme Court has explained:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

***Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009) (citations omitted).

In disposing of this claim, the trial court stated:

> The charges for which [Appellant] was tried involved drugs possessed by an inmate; so his incarceration was no secret. The opportunity for an incarcerated person to have drugs in a prison would certainly be a factor critical for the Commonwealth to explain to a jury and meet its burden of proof. Any possible prejudice to [Appellant] is clearly outweighed by the probative value of the evidence of his arrest. There was no prejudice showing the facts of his arrest as the crimes charged presupposed his incarceration. The probative value of the evidence relating how [Appellant] came to be incarcerated, and had the opportunity to have the drug which caused the death of Stephen Burkhart, was an essential part of the prosecution, and clearly outweighed any prejudicial effect it may have had on the jury.

Trial Court Opinion, 11/26/19, at 17.

We agree with the trial court's astute reasoning. For the reasons discussed above, we affirm the trial court.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2020